Slip Op. 15-120

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
UNITED STATES OF AMERICA,               :
                                        :
          Plaintiff,                    :
                                        :
              v.                        :        Before: Richard K. Eaton, Judge
                                        :
AMERICAN HOME ASSURANCE                 :        Court No. 10-00179
COMPANY,                                :
                                        :
          Defendant.                    :
_____ :

**<u>OPINION</u>**

[Defendant's motion for summary judgment is granted, in part, and plaintiff's cross-motion for
summary judgment is granted, in part.]

Dated: October 28, 2015

  *Edward F. Kenny* and *Beverly A. Farrell*, Trial Attorneys, Commercial Litigation Branch,
Civil Division, United States Department of Justice, of New York, NY, and *Brandon T. Rogers*,
Office of Assistant Chief Counsel, United States Customs and Border Protection, of
Indianapolis, IN, argued for plaintiff.  With them on the brief were *Marcella Powell*, Trial
Attorney, *Stuart F. Delery*, Assistant Attorney General, and *Amy Rubin*, Senior Trial Counsel,
Commercial Litigation Branch, Civil Division, United States Department of Justice, of New
York, NY.

  *Herbert C. Shelley*, *Michael T. Gershberg*, and *Mark F. Horning*, Steptoe & Johnson
LLP, of Washington, DC, argued for defendant.  With them on the brief were *Taylor Pillsbury*,
*Ralph Sheppard*, and *Michael B. Jackson*, Meeks, Sheppard, Leo & Pillsbury, of Newport Beach,
CA, and Fairfield, CT, argued for defendant.

  EATON, Judge:  This matter is before the court on the cross-motions for

summary judgment of plaintiff, the United States ("plaintiff" or the "United States"), on behalf

of the United States Customs and Border Protection Agency ("Customs"), and defendant

American Home Assurance Company ("defendant" or "AHAC").  *See* Pl.'s Cross Mot. for

Summ. J. (ECF Dkt. No. 41-1); Def. American Home Assurance Company's Mot. for Summ. J.

(ECF Dkt. No. 44) ("Def.'s Br.").  In this action, the United States seeks to recover on a

continuous transaction bond, issued by AHAC to secure unpaid duties and interest on freshwater

crawfish tail meat imported into the United States from the People's Republic of China ("PRC").

The United States claims that AHAC is liable to Customs for: (1) unpaid antidumping duties; (2)

statutory prejudgment interest pursuant to 19 U.S.C. § 580, in excess of the bond amount; (3)

post-liquidation interest under 19 U.S.C. § 1505(d) for non-payment of the duties; (4) equitable

prejudgment interest; and (5) post-judgment interest.[1]  *See* Pl.'s Mem. in Opp'n to Def.'s Mot.

for Summ. J. & in Supp. of Gov't Cross Mot. for Summ. J. 6 (ECF Dkt. No. 41) ("Pl.'s Br.").

By its motion, with the exception of post-judgment interest, defendant disputes these claims.

Jurisdiction lies pursuant to 28 U.S.C. § 1582(2) (2012).

For the reasons set forth below, defendant's motion for summary judgment is granted in

part, and plaintiff's cross-motion for summary judgment is granted in part.


## STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to a judgment as a matter of law."  USCIT R.

56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "When both parties move

---

[1]       The United States does not seek statutory prejudgment interest on the continuous
transaction bond pursuant to 19 U.S.C. § 1677g.  *See* Pl.'s Mem. in Opp'n to Def.'s Mot.
for Summ. J. & in Supp. of Gov't Cross Mot. for Summ. J. 17–18 (ECF Dkt. No. 41) ("AHAC's
liability for this type of interest stems from the importer/bond principal's default on its
obligations to pay duties to Customs, meaning such interest is capped by the amount of the
bond—in this case $500,000.00 per annual period.  AHAC's liability for the twenty-five (25)
entries at issue, *exclusive of 19 U.S.C. § 1677g interest*, exceeds $500,000.00 per annual period.
Thus, the parties need not argue and this Court need not reach a decision on AHAC's liability for
19 U.S.C. § 1677g interest in this case, as the full bond amount would be due in any event for
each annual period.  However, AHAC is liable for other forms of interest as a result of Grand
Nova's default and for its own default.").

for summary judgment, the court must evaluate each motion on its own merits, resolving all

reasonable inferences against the party whose motion is under consideration." *JVC Co. of Am. v.*

*United States*, 234 F.3d 1348, 1351 (Fed. Cir. 2000).


## BACKGROUND

The facts described below have been taken from defendant's statement of undisputed

material facts.[2]  *See* Def.'s Statement of Material Facts (ECF Dkt. No. 33-2) ("Def.'s

Statement").  Citation to the record is provided where a fact, although not admitted in the parties'

papers, is uncontroverted by record evidence.

"Importers must generally post security before [Customs] will release imported

merchandise from its custody.  Importers often use surety companies to post the required

security." *United States v. Am. Home Assurance Co.* (*AHAC II*), 38 CIT __, __, 964 F. Supp. 2d

1342, 1345 (2014) (citation omitted), *aff'd in part, vacated in part, rev'd in part on other*

*grounds*, 789 F.3d 1313 (Fed. Cir. 2015); *see* 19 C.F.R. § 142.4(a) (2001).  "A surety bond

creates a three-party relationship, in which the surety becomes liable for the principal's debt or

duty to the third party obligee (here, the government).  'If the *surety* fails to perform, the

Government can sue it on the bonds.'" *Ins. Co. of W. v. United States*, 243 F.3d 1367, 1370

(Fed. Cir. 2001) (quoting *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1160 (Fed. Cir.

1985)).

---

[2]        Although plaintiff did not respond to defendant's USCIT Rule 56(c) statement, its
statement of facts is set forth in its brief before the court.  *See* Pl.'s Br. 3–9.

In January 2001, AHAC, a company authorized to issue surety bonds, entered into a

continuous transaction bond[3] with importer Grand Nova International Inc. ("Grand Nova") to

secure duties owed on the entry of its imported merchandise.  *See* Compl. ¶¶ 4, 6 (ECF Dkt. No.

2).  Following the importer's default on payment of antidumping duties to Customs, the United

States, in this action, now seeks recovery on the bond, from AHAC, for these unpaid duties.  *See*

28 U.S.C. § 1582(2) (suit on a bond).

Between June and August 2001, Grand Nova made twenty-three entries that were subject

to the antidumping duty order on freshwater crawfish tail meat from the PRC.  Def.'s Statement

¶¶ 1, 2; *Freshwater Crawfish Tail Meat From the PRC*, 62 Fed. Reg. 48,218 (Dep't of

Commerce Sept. 15, 1997) (notice of amendment to final determination of sales at less than fair

value and antidumping duty order) ("Order").  Each of these entries occurred during the first

annual bond period[4] (i.e., between January 2001 and January 2002).  Twenty-two of the entries

were exported by Qingdao Zhengri Seafood Co., Ltd. ("Qingdao Zhengri") and the other entry

was exported by Yancheng Yaou Seafood Co., Ltd. ("Yancheng Yaou").  *See* Def.'s Statement ¶

3.  Grand Nova declared a 0% ad valorem antidumping duty rate for the twenty-two entries

exported by Qingdao Zhengri and a 201.63% rate for Yancheng Yaou's entry.  *See* Def.'s

Statement ¶ 3.  Because these entries were subject to an antidumping duty order, and an

administrative review had been requested, liquidation was suspended by operation of law.  *See*

---

[3]     "A 'continuous [transaction] bond,' as compared to a 'single transaction bond,'
covers 'liabilities resulting from multiple import transactions over a period of time, such as one
year.'"  *United States v. Am. Home Assurance Co.* (*AHAC III*), 789 F.3d 1313, 1316 n.2 (Fed.
Cir. 2015) (quoting *Nat'l Fisheries Inst., Inc. v. U.S. Bureau of Customs & Border Prot.*, 30 CIT
1838, 1839, 465 F. Supp. 2d 1300, 1302 (2006) (citing 19 C.F.R. § 113.12)).

[4]     The "bond period" is the duration for which the bond remains effective, thereby
securing the importer's merchandise entered during that time.  The "annual bond period" is a
twelve-month segment of the bond period.  Generally, Customs may cancel, and the surety may
terminate, a continuous transaction bond during a bond period.

*United States v. Am. Home Assurance Co.* (*AHAC I*), 35 CIT __, __, Slip Op. 11-57, at 11

(2011).

On April 21, 2003, the Department published the final results of its administrative review

of the antidumping duty order on freshwater crawfish tail meat for the period of review

September 1, 2000 through August 31, 2001, in which it assigned both exporters, Qingdao

Zhengri and Yancheng Yaou, the PRC-wide rate of 223.01%.  *See Freshwater Crawfish Tail*

*Meat from the PRC*, 68 Fed. Reg. 19,504, 19,508 (Dep't of Commerce Apr. 21, 2003) (notice of

final results of antidumping duty administrative review) ("Final Results").

On May 21, 2003, Qingdao Zhengri, Yancheng Yaou, and a third exporter, China

Kingdom Import & Export Co., Ltd. ("China Kingdom"), whose merchandise was subject to the

Final Results, brought suit in this Court, challenging the rates they were assigned by Commerce.

*See China Kingdom Imp. & Exp. Co. v. United States* (*China Kingdom I*), 31 CIT 1329, 1330,

507 F. Supp. 2d 1337, 1340 (2007).  On July 1, 2003, the *China Kingdom* Court entered an

injunction against liquidation of subject merchandise, including merchandise with duties covered

by AHAC's bond.  *See* Prelim. Inj. to Enjoin the Liquidation of Certain Entries, *China Kingdom*

*Imp. & Exp. Co. v. United States*, No. 03-00302 (CIT July 1, 2003) ECF Dkt. No. 8 ("*China*

*Kingdom* Prelim. Inj.").  On September 4, 2007, the Court sustained the PRC-wide rate of

223.01% assigned to Qingdao Zhengri and Yancheng Yaou in the Final Results.  *See China*

*Kingdom*, 31 CIT at 1366, 507 F. Supp. 2d at 1370–71.  The Court also remanded to Commerce

China Kingdom's rate, directing the Department to calculate and assign a new antidumping duty

rate for that company.  *See id.* at 1366, 507 F. Supp. 2d at 1370–71.

On January 23, 2009, following the entry of judgment in *China Kingdom*, Customs

liquidated Yancheng Yaou's entry of freshwater crawfish tail meat, and on April 3, 2009,

Customs liquidated the other twenty-two entries exported by Qingdao Zhengri.  *See* Def.'s

Statement ¶¶ 13, 14.  Neither the importer nor AHAC protested the liquidation of the twenty-three entries.

After the importer, Grand Nova, defaulted on payment of the antidumping duties owed on each entry, Customs mailed its first demand to AHAC in April 2009, seeking payment under the bond for the entry of Yancheng Yaou's merchandise.  *See* Compl. Ex. C.  In July 2009, Customs also sent AHAC its first demand on the bond for payment of unpaid duties and accrued interest for the twenty-two entries made by Grand Nova of Qingdao Zhengri's merchandise.  *See* Compl. Ex. D.  Each month thereafter, Customs sought payment from AHAC on the bond in addition to accrued post-liquidation interest under 19 U.S.C. § 1505(d).  *See* Compl. Ex. D.

In June and July 2002, Grand Nova also entered freshwater crawfish tail meat into the United States that was exported by a new shipper,[5] Shouzhou Huaxiang Foodstuffs Co., Ltd. ("Shouzhou Huaxiang").  *See* Def.'s Statement ¶ 15–16.  As a new shipper, Shouzhou Huaxiang was assigned the PRC-wide deposit rate of 201.63% ad valorem.  *See* Order, 62 Fed. Reg. at 48,219.  Both the June entry and the July entry were made during the second annual bond period (i.e., January 2002 through January 2003) under AHAC's bond.  In addition to AHAC's continuous transaction bond, Grand Nova also secured the entries with two single transaction bonds[6] issued by Lincoln General Insurance Company ("Lincoln General").  Def.'s Statement ¶ 20, Exs. A–B.

---

[5]     "Upon request, Commerce is required by statute to perform administrative reviews 'for new exporters and producers' whose sales have not previously been examined." *Jinxiang Yuanxin Imp. & Exp. Co. v. United States*, 39 CIT __, __, Slip Op. 15-22, at 8 (2015) (quoting 19 U.S.C. § 1675(a)(2)(B)).

[6]     A "single transaction bond" "cover[s] the obligations arising from one entry." *Nat'l Fisheries Inst., Inc. v. U.S. Bureau of Customs & Border Prot.*, 30 CIT 1838, 1839, 465 F. Supp. 2d 1300, 1302 (2006) (citing 19 C.F.R. § 113.12(a)).

In June 2004, Customs liquidated Shouzhou Huaxiang's June 2002 entry.  Def.'s

Statement ¶ 21.  Lincoln General timely protested Customs' liquidation of the June entry of

Shouzhou Huaxiang's merchandise, and Customs denied Lincoln General's protest on November

8, 2005.  Def.'s Statement ¶ 22.  AHAC, however, did not file a protest of its own.  In January

2006, Customs reliquidated the June entry.  Def.'s Statement ¶ 23.  In March 2010, following

Grand Nova's default in payment of the antidumping duties owed, Customs sent its first demand

for payment on the June entry to AHAC, which included post-liquidation interest under 19

U.S.C. § 1505(d).  Def.'s Statement ¶ 25.  Each month thereafter, Customs sought payment from

AHAC on the bond in addition to interest that had accrued.

As to the July entry, it was liquidated in June 2004.  Def.'s Statement ¶ 21.  AHAC

timely protested Customs' liquidation, which Customs denied on June 27, 2005.  Def.'s

Statement ¶ 28.  Thereafter, Customs reliquidated the July entry.  Def.'s Statement ¶ 29.  AHAC

protested Customs' reliquidation in December 2005, which Customs denied shortly thereafter on

December 27, 2005.  Def.'s Statement ¶ 30.  AHAC did not challenge the denial of either protest

in this court.  In October 2005, after the importer's default on the antidumping duties owed,

Customs made its first demand on AHAC for payment on the July entry.  Compl. Ex. H.

Customs continued to make monthly demands for the unpaid amount plus accrued interest.  *See*

Compl. Ex. H.


## DISCUSSION

### I.   CUSTOMS TIMELY LIQUIDATED THE ENTRIES AT ISSUE

As noted, in May 2003, three exporters, Qingdao Zhengri, Yancheng Yaou, and China

Kingdom, whose merchandise was subject to the Final Results and assigned the PRC-wide

antidumping duty rate, challenged Commerce's determination in this Court.  These companies

immediately sought and were granted a preliminary injunction, enjoining Customs from

liquidating their merchandise.  *See China Kingdom* Prelim. Inj.  The preliminary injunction

provided that it would dissolve by its own terms upon issuance of the final decision of this Court.

*See id.* at 2.  On September 4, 2007, the *China Kingdom* Court sustained in part, and remanded in

part, Commerce's Final Results.  *See China Kingdom I*, 31 CIT 1329, 507 F. Supp. 2d 1337.

Specifically, the Court sustained Commerce's determination of the PRC-wide rate of 223.01%

assigned to Qingdao Zhengri and Yancheng Yaou, and remanded China Kingdom's[7] rate to the

Department for further review.  *See id.* at 1366, 507 F. Supp. 2d at 1370–71.  On remand, the

Department calculated a lower antidumping duty rate for China Kingdom, and on September 12,

2008, the Court sustained Commerce's results on redetermination.  *See China Kingdom Imp. &*

*Exp. Co. v. United States* (*China Kingdom II*), 32 CIT 994, 995 (2008).  Judgment was entered

September 12, 2008.

No appeal of the *China Kingdom II* judgment was taken to the Federal Circuit.  The

Department published its Amended Final Results in the Federal Register on December 8, 2008,

stating that it "w[ould] instruct [Customs] to liquidate entries of freshwater crawfish tail meat

from the [PRC] during the review period at the assessment rate the Department calculated for the

final results of review as amended," and that it "intend[ed] to issue assessment instructions to

[Customs] 15 days after the date of publication of these amended final results of review."  *See*

*Crawfish Tail Meat from the PRC*, 73 Fed. Reg. 74,457, 74,458 (amended final results of the

administrative review pursuant to final court decision) ("Amended Final Results").  Following

publication of the Amended Final Results, Customs liquidated Yancheng Yaou's entry of

---

[7]         China Kingdom's surety, if indeed there was one, is not a party to this action.

freshwater crawfish tail meat on January 23, 2009, and liquidated Qingdao Zhengri's twenty-two

remaining entries on April 3, 2009.  *See* Def.'s Statement ¶¶ 13–14.

This history notwithstanding, AHAC contends the entries imported by Grand Nova that

were exported by Qingdao Zhengri and Yancheng Yaou, were deemed liquidated by operation of

law on May 3, 2008 at the duty rates declared by Grand Nova at entry.  Def.'s Br. 11.  AHAC

insists that this is the case because Customs failed to liquidate the entries within six months of

the expiration of the period during which an appeal from the September 4, 2007 Opinion and

Order could have been taken to the Federal Circuit (i.e., on November 3, 2007).  Def.'s Br. 10–

11, 15–16 (citing 19 U.S.C. § 1504(d)).  Defendant maintains that, because the *China Kingdom*

Court's September 4, 2007 Opinion and Order sustained the rates assigned to Qingdao Zhengri

and Yancheng Yaou in the Final Results, this constituted a "judgment" with respect to the two

companies' entries, thus triggering the commencement of their appeal time to the Federal Circuit

of sixty days.  *See* Def.'s Br. 10–11.  For AHAC, upon the expiration of the time to appeal this

supposed "judgment," the six-month period during which Customs must liquidate their entries

commenced.  In other words, according to AHAC, because Customs did not liquidate their

entries during this six-month period, they were deemed liquidated by operation of law pursuant

to 19 U.S.C. § 1504(d).

The court finds defendant's claim to be meritless and holds that Customs' liquidation of

Grand Nova's entries exported by Qingdao Zhengri and Yancheng Yaou was timely.

Pursuant to statute, following the removal of a statutory suspension of liquidation or

court-ordered injunction, Customs must liquidate any entries whose liquidation was suspended or

enjoined within six months "after receiving notice of the removal from the Department of

Commerce, other agency, or a court with jurisdiction over the entry."  19 U.S.C. § 1504(d).

"Any entry not liquidated within the requisite six-month period shall be deemed liquidated at the

amount originally asserted by the importer at the time of entry." *Mazak Corp. v. United States*,

33 CIT 1637, 1638–39, 659 F. Supp. 2d 1352, 1355 (2009).  "Thus, in order for a deemed

liquidation to occur, (1) the suspension of liquidation [or court-ordered injunction] that was in

place must have been removed; (2) Customs must have received notice of the removal of the

suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving

such notice." *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1376 (Fed. Cir. 2002).

     The injunction entered in *China Kingdom* on July 1, 2003 provided that the liquidation of

all of the entries at issue was halted until "the final court decision in this action before the United

States Court of International Trade."  *See China Kingdom* Prelim. Inj. 2.  The Federal Circuit has

found that, when this language appears in an injunction against liquidation, the injunction

dissolves following the expiration of the parties' time to file an appeal of the final court decision.

*See Fujitsu*, 283 F.3d at 1377–79.  Thus, the *China Kingdom* injunction expired by its terms on

November 11, 2008 (i.e., sixty days after September 12, 2008), following the expiration of the

parties' time to file an appeal of the *China Kingdom* Court's final judgment to the Federal

Circuit.  In other words, it was the judgment in the *China Kingdom* case, not entry of the Opinion

and Order that terminated the injunction.

     Although the September 4, 2007 Opinion and Order sustained the rates assigned by

Commerce in the Final Results to two of the companies (Qingdao Zhengri and Yancheng Yaou),

it remanded the third exporter's rate (China Kingdom) to Commerce to be recalculated.  *See*

*China Kingdom I*, 31 CIT at 1366, 507 F. Supp. 2d at 1369–70.  The *China Kingdom* Court did

not enter final judgment when it issued the Opinion and Order, and it issued no other order

ending the injunction against liquidation of the companies' entries.  Rather, the final judgment

was entered on September 12, 2008, following the Court's review of the Department's results of

redetermination.  *See China Kingdom II*, 32 CIT at 994.  Therefore, despite defendant's

insistence that, for Qingdao Zhengri and Yancheng Yaou's entries covered by the AHAC bond, the injunction expired on November 3, 2007 (i.e., the claimed date of expiration of the period during which a party could take an appeal to the Federal Circuit of the *China Kingdom I decision*), the court finds that, because there was no "final court decision" with respect to the "action" contesting the Final Results until judgment was entered on September 12, 2008, the injunction did not dissolve by its own terms.  That is, the *China Kingdom I* Opinion and Order did not end the injunction.  Thus, the first requirement of § 1504(d) for deemed liquidation (i.e., "the suspension [or injunction] of liquidation that was in place must have been removed") was not met when the Opinion and Order was entered.  *See Fujitsu*, 283 F.3d at 1376.

Moreover, for a deemed liquidation to occur under § 1504(d), Customs must receive notice of the lifting of a suspension or injunction.  No such notice was given with respect to the *China Kingdom I* opinion.  Indeed, the notice required by § 1504(d) was not published in the *Federal Register* until December 8, 2008.  *See* Amended Final Results, 73 Fed. Reg. at 74,458.  This notice, although not published within the ten-day period required by the statute,[8] was

---

[8]      The notice was not published within the ten days provided for in 19 U.S.C. § 1516a(e)(2) ("If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit— . . . entries, the liquidation of which was enjoined under subsection (c)(2) of this section, shall be liquidated in accordance with the final court decision in the action.  Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.").  Despite this defect, the Federal Circuit has found that such a procedural error has no bearing on the result of the timeliness of a liquidation pursuant to 19 U.S.C. § 1504(d).  *See Fujitsu*, 283 F.3d at 1382 ("Commerce's unexplained delay in publishing notice of the *Fujitsu General* decision, frustrating though it may be, does not change the result in this case.  Section 1504(d) and section 1516a(e) are separate statutes.  Section 1504(d) governs deemed liquidation.  Deemed liquidation under section 1504(d) can occur only if Customs fails to liquidate entries within six months of having received notice of the removal of a suspension of liquidation.  In addition, there is no language in section 1516a(e) that attaches a consequence to a failure by Commerce to meet the ten-day publication requirement, let alone the consequence of deemed liquidation under section 1504(d).  Under these circumstances, there simply is no basis upon which we could hold that because Commerce failed to timely publish notice of our decision in

(footnote continued)

nonetheless the first notice alerting Customs of the removal of the injunction against liquidation

that was put in place by the *China Kingdom* Court.  *See id.*  Therefore, because no notice was

published following the *China Kingdom I* opinion, the second condition needed for a deemed

liquidation was not met.  It was not, then, until December 8, 2008 that the six-month clock began

to tick against Commerce.  *See* 19 U.S.C. § 1504(d).  Customs liquidated Yancheng Yaou's entry

on January 23, 2009 and Qingdao Zhengri's twenty-two entries on April 3, 2009, well within the

six-month period for liquidating previously-suspended entries.  Because Customs timely

liquidated all of the entries made by Grand Nova at issue here, there was no deemed liquidation.


## II.   CUSTOMS' DEMANDS ON DEFENDANT FOR PAYMENT ON THE BOND WERE PROPER

As previously noted, AHAC entered into a continuous transaction bond with Grand Nova

to secure the duties on Grand Nova's entered merchandise.  In addition to the AHAC continuous

transaction bond, Grand Nova also posted single transaction bonds issued by Lincoln General, a

surety unrelated to AHAC, for each of the June and July 2002 entries that were exported by

Shouzhou Huaxiang.  *See* Def.'s Statement. Exs. A, B.  Following Grand Nova's default,

Customs sought payment from AHAC on the continuous transaction bond, rather than first

seeking to recover the duties from the single transaction bond surety, Lincoln General.  *See*

Def.'s Statement ¶ 27.

AHAC maintains that it is not liable for the antidumping duties owed for several reasons.

First, it argues that a continuous transaction bond cannot be used to secure antidumping duties in

excess of 5% ad valorem of the merchandise.  Def.'s Br. 17 (citing *Antidumping or*

---

*Fujitsu General*, the entries at issue in Protest 3 were deemed liquidated under 19 U.S.C.
§ 1504(d)." (citing *Canadian Fur Trappers Corp. v. United States*, 884 F.2d 563, 566 (Fed. Cir.
1989))).

*Countervailing Duties; Acceptance of Cash Deposits; Bonds, or Other Security to Obtain*

*Release of Merchandise; Revision of T.D. 82-56*, 19 Cust. Bull. & Decisions 331, 332 (1985)

("Treasury Decision 85-145")).  That is, under AHAC's reading of Treasury Decision 85-145,

because the bond it issued was a continuous transaction bond, and the amount of antidumping

duties owed exceeded 5% of the value of the entries, "Customs was precluded from relying on

AHAC's continuous transaction bond."  *See* Def.'s Br. 17.

It is clear that AHAC's reliance on Treasury Decision 85-145 is misplaced.  The text of

the Decision, which is a memorandum of agreement between the Department and Customs

concerning acceptable security for release of merchandise subject to antidumping and

countervailing duty proceedings, reads, in relevant part:

> Unless specifically instructed by the Secretary of Commerce or a designee to
> accept another form of security or a cash deposit for estimated duties, the U.S.
> Customs Service may accept, at its discretion, any of the following forms of
> security for payment of estimated antidumping or countervailing duties, or both,
> on merchandise entered for consumption in the United States. . . .  If the amount
> of the estimated antidumping or countervailing duty is less than 5 percent *ad
> valorem* (or the equivalent), a continuous basic importation and entry bond, as
> described in 19 C.F.R. 113.62, in an amount sufficient to cover the amount of the
> estimated antidumping or countervailing duty, or both, determined by the
> Secretary of Commerce, and all other entry bonding requirement[s] . . . .

Treasury Decision 85-145, at 332.  According to AHAC, Treasury Decision 85-145(3) precludes

it from being held fully liable for the antidumping duties owed on the continuous transaction

bond because a continuous transaction bond cannot be used to secure such duties above 5% ad

valorem of the entries. Def.'s Br. 17.  The Treasury Decision, however, speaks only to the

relationship between Customs and Commerce, and is silent as to AHAC's contractual obligations

under the bond.  The agreement between Customs and Commerce provides only that, where the

estimated antidumping duties are *less* than 5% ad valorem, a continuous transaction bond may be

accepted by Customs to secure the antidumping duties owed on the entry.  There is, however,

nothing in the Decision that limits the liability under the bond to 5%, or that indicates Customs is

prohibited from recovering antidumping duties in excess of 5% ad valorem on a continuous

transaction bond.[9]  Therefore, this argument fails.

Next, AHAC claims that it "bonded general entry requirements while Lincoln [General[10]]

bonded the antidumping duty liability."  Def.'s Br. 18.  For AHAC, because Lincoln General

undertook a more specific obligation by issuing a single transaction bond for the entries it

secured, AHAC, as the continuous transaction bond issuer, could not be called upon for payment

before payment was sought from Lincoln General.  AHAC relies on its reading of the

Restatement[11] of the Law (Third) of Suretyship & Guaranty and asserts that the Restatement

provides that Customs was required to seek payment from Lincoln General, under its single

transaction bond, before demanding payment from AHAC on the continuous transaction bond.

Def.'s Br. 18 (citing Restatement (Third) of Suretyship & Guaranty § 53(4)(c) (Am. Law Inst.

---

[9]      Indeed, Customs itself expressed this view prior to the entry of the merchandise at
issue in this case.  *See, e.g.*, HQ 230339 (June 25, 2004), *available at* 2004 WL 2041328, at *10
("Here, Highlands incorrectly applies T.D. 85-145.  The relevant language reproduced above
does not limit the surety's liability to antidumping duty of 5 percent ad valorem on a continuous
bond, as the Protestant would believe.  This language merely gives [Customs] the option of using
a continuous basic importation and entry bond alone, i.e., without requiring an additional bond to
secure antidumping duty, when the estimated antidumping [duty] due is small, that is less than
five percent ad valorem.  We see no basis, and Highlands offers none, to construe the language
of T.D. 85-145, to limit a surety's liability independent of the liability amount contracted for and
appearing on the face of the bond.  Also, in HRL 226215 (March 28, 1996) we noted that a
continuous bond could be used to secure payment of antidumping duty up to the bond amount.").

[10]      Although it, undoubtedly, could have, AHAC did not try to implead Lincoln
General.

[11]      While neither binding nor persuasive legal authority, a restatement is a widely
recognized authority on the law that has been looked to by the Federal Circuit when there is no
controlling law on point in, among other things, collection actions involving suits on a bond.  *See
United States v. Great Am. Ins. Co. of N.Y.*, 738 F.3d 1320, 1332 (Fed. Cir. 2013); *TianRui Grp.
Co. v. Int'l Trade Comm'n*, 661 F.3d 1322, 1327–28 (Fed. Cir. 2011); *United States v. Hitachi
Am., Ltd.*, 172 F.3d 1319, 1337 (Fed. Cir. 1999).

1996)).  In making its argument, defendant asserts that, "when one surety undertakes a specific

obligation and another surety undertakes a general/broader obligation, if the specific obligation is

called to perform by the principal, the surety who undertook the specific obligation should

perform or bear the cost of performance."  Def.'s Br. 18.

    Relatedly, AHAC claims that plaintiff's failure to collect on the single transaction bonds

"against Lincoln General has resulted in changed circumstances and prejudice to AHAC."

Def.'s Br. 19 (citing *Lyell Theatre Corp. v. Lowes Corp.*, 682 F.2d 37, 43 (2d Cir. 1982)).

According to AHAC, this "failure to collect against the Lincoln General single transaction bonds

has not only increased AHAC's liability, but also impaired any collateral to which [the] surety

could look for reimbursement.".  Def.'s Br. 19.

    The court finds that plaintiff was permitted to seek recovery against AHAC without first

demanding payment from Lincoln General, and that AHAC's contention, that under the

Restatement (Third) of Suretyship & Guaranty, as the general obligor, it is relieved of liability

until Customs seeks payment from Lincoln General, the specific obligor, is unavailing.

    The Restatement reads, in relevant part,

> [w]hen there is more than one secondary obligor with respect to the same
> underlying obligation, the relationship among the secondary obligors is either that
> of subsuretyship or cosuretyship. . . .
> . . .
> Unless the circumstances reveal a contrary intention, when two secondary
> obligations secure the duty of the same principal obligor to perform the same
> obligation, and one secondary obligation is specific and limited to that
> performance, while the other secondary obligation is broader in scope, the obligor
> of the specific obligation is a principal surety and the obligor of the general
> obligation is a subsurety.

Restatement (Third) of Suretyship & Guaranty § 53(1), (4)(c).

    Relying on this language, AHAC appears to argue: (1) Lincoln General's bond was to

secure antidumping duties, while AHAC's bond was to secure regular duties, or as it stated in its

protest, "Lincoln [General] undertook the specific obligation to Customs to secure the

antidumping duties in this matter whereas [AHAC] undertook the general/broader obligation to

secure any other issues that might arise ([e.g.], FDA, Redelivery, etc.)"; and (2) because Lincoln

General's bonds covered only specific entries while AHAC's bonds had the potential to cover

many entries, Lincoln General's obligations were specific while AHAC's were general.  Def.'s

Br. Ex. F, at 5.

Contrary to defendant's assertion, however, there is nothing to suggest that Lincoln

General undertook obligations more specific than AHAC with respect to securing the

antidumping duties owed on the individual entries imported by Grand Nova.  The language of

each bond is identical:

> In order to secure payment of any duty, tax or charge and compliance with law or
> regulation as a result of activity covered by any condition referenced below, we,
> the below named principal(s) and surety(ies), bind ourselves to the United States
> in the amount or amounts, as set forth below.

See Def.'s Statement Exs. A, B.  The "condition referenced" is "Importer or Broker . . . 113.62,"

which provides, among other things, for the joint and several liability of the principal and surety

for "any duties, taxes, and charges imposed."  See 19 C.F.R. § 113.62(a); Def.'s Br. Exs. A, B.

As to AHAC's specificity arguments, first, there is nothing in the record to indicate that

both Lincoln General's and AHAC's bonds did not provide security for antidumping duties, nor

is there anything that would indicate that Lincoln General's understanding of, or obligation with

respect to, the word "duties" differed from that of AHAC.  The Federal Circuit recently indicated

the word "duties," unless there is some indication to the contrary, means that these bonds secure

the payment of antidumping duties as well as regular duties.  See United States v. Am. Home

Assurance Co. (AHAC III), 789 F.3d 1313, 1325 (Fed. Cir. 2015) ("As written, the term 'duties'

does not modify the type of 'bonds' on which interest shall be allowed.  Instead, the statute calls

for interest on '*all* bonds.'  The term 'duties' reflects only the requisite *res litigiosae*—i.e., the general nature of the disputed property in the government's legal action against the surety.  Thus, by the statute's plain terms, it covers, among other things, bonds securing the payment of antidumping duties when the government sues for payment under those bonds.").

As to the bonds themselves, their wording is identical.  Both sureties were therefore equally liable with respect to each entry for the payment of duties.  That AHAC's continuous transaction bond might make it liable for duties charged on entries made before or after those secured by Lincoln General's single transaction bonds, did not render its obligations as to the subject entries more general than Lincoln General's.  That is, for the transactions that each surety insured, their obligations were identical, and AHAC's situation of being liable on other transactions does not make its obligations with respect to the individual transactions at issue less specific.  Therefore, there is nothing in the bonds themselves or in the law that surrounds them indicating that Lincoln General's obligations were somehow more specific than AHAC's.

Finally, for the reasons discussed above, Customs was not required to seek payment from Lincoln General before approaching AHAC.  Accordingly, defendant's claims of changed circumstances and prejudice as a result of the failure on the part of Customs to first make a demand for payment on Lincoln General are equally unconvincing.

### III.    PLAINTIFF IS ENTITLED TO STATUTORY PREJUDGMENT INTEREST PURSUANT TO 19 U.S.C. § 580

In this collection action, the United States seeks an award of statutory prejudgment interest under 19 U.S.C. § 580, which provides that, "[u]pon all bonds, on which suits are brought for the recovery of duties, interest shall be allowed, at the rate of 6 per centum a year, from the time when said bonds became due."  *See* 19 U.S.C. § 580; Pl.'s Br. 22.  AHAC disputes

liability for § 580 interest and claims that the statute, enacted in 1799 before antidumping duties

had been instituted, cannot encompass special duties such as antidumping duties. *See* Def.'s Br.

3.

        This question, however, was recently settled by the Federal Circuit in *AHAC III*. There,

the Federal Circuit held "that 19 U.S.C. § 580 provides for interest on bonds securing both

traditional customs duties and antidumping duties," and thus "that the government is entitled to

statutory prejudgment interest under § 580." *AHAC III*, 789 F.3d at 1324, 1328. In reaching its

holding, the Federal Circuit examined the plain language of § 580 and found the statute to be

"short, free-standing . . . within the Administrative Provisions section of Chapter 3 in Title 19,"

and that "[i]t d[id] not cross-reference other statutory provisions." *See id.* at 1325. The Court

further found the language of the statute "'all bonds' on which the government sues for 'the

recovery of duties' is clear and unqualified." *Id.* Because "the term 'duties' d[id] not modify the

type of 'bonds' on which interest shall be allowed," but rather "the statute call[ed] for interest on

'*all* bonds,'" the Court found that "by the statute's plain terms, it cover[ed], among other things,

bonds securing the payment of antidumping duties when the government sues for payment under

those bonds." *Id.* (quoting 19 U.S.C. § 580).

        In accordance with the Federal Circuit's construction of 19 U.S.C. § 580, the court holds

that AHAC is liable for § 580 interest on the delayed payment of the antidumping duties owed

under the bond.

IV.   **PLAINTIFF IS ENTITLED TO POST-LIQUIDATION INTEREST UNDER 19 U.S.C. § 1505(d)
      UP TO THE FACE AMOUNT OF THE BOND**

In addition to the antidumping duties themselves and other interest, the United States

seeks post-liquidation interest under the provisions of 19 U.S.C. § 1505(d)[12] on all of the entries

at issue.  *See* Pl.'s Br. 18.  According to the United States, it is entitled to § 1505(d) interest

"when an unpaid balance remains on any entry 30 days after liquidation."  Pl.'s Br. 18.  As a

defense to plaintiff's claim, AHAC asserts that § 1505(d) interest applies only to ordinary

customs duties and not to antidumping duties.  *See* Def.'s Br. 21 (citing *Dynacraft Indus., Inc. v.

United States*, 24 CIT 987, 994, 118 F. Supp. 2d 1286, 1293 (2000)).

As to this defense, however, the United States maintains that "these charges [(i.e., post-

liquidation interest)] became 'final and conclusive' by operation of 19 U.S.C. § 1514" when

AHAC failed to either protest Customs' liquidations or challenge the denial of its protests in this

Court.  *See* Pl.'s Br. 18.  As a result, for plaintiff, AHAC may not raise its defense here.

As an initial matter, defendant is not foreclosed in this action on a bond, from arguing, as

a defense, that § 1505(d) interest does not apply to antidumping duties.  *See United States v.

Toshoku Am., Inc.*, 879 F.2d 815, 817–18 (Fed. Cir. 1989) (explaining that even after

liquidation, "[p]roof that the importer has complied with the conditions of the bond has

traditionally been and still remains a complete defense to a collection suit brought on the bond");

---

[12]     The statute reads as follows:

> If duties, fees, and interest determined to be due or refunded are not paid in full
> within the 30-day period specified in subsection (b) of this section, any unpaid
> balance shall be considered delinquent and bear interest by 30-day periods, at a
> rate determined by the Secretary, from the date of liquidation or reliquidation
> until the full balance is paid.  No interest shall accrue during the 30-day period in
> which payment is actually made.

19 U.S.C. § 1505(d).

*see also United States v. Utex Int'l Inc.*, 857 F.2d 1408, 1414 (Fed. Cir. 1988) ("It is not

characteristic of either the law of surety or the law of contracts that a defendant must routinely

pay [, as it must do in order to file a protest,] the amount demanded prior to judicial

determination of contractual liability.  Absent statutory directive or clear Congressional intent to

the contrary, we do not impose it.  The cases cited by the government referring to finality of

assessment absent a timely protest all refer to duties and related exactions subsumed in final

liquidation.  We entirely agree that both sides to this action are now barred from challenging the

liquidation.  But in a suit for damages brought by the government, it appears clear that

historically the surety was not required to file a protest and pay the full demanded damages in

advance, in order to preserve its right to defend on the issue of liability.  We conclude that the

1980 legislative enactments did not change the right of the surety to defend against a claim for

liquidated damages.  Under the circumstances that here prevail the surety was not required to file

an administrative protest and pay the damages assessed, as prerequisites to defending against the

charge." (citation omitted)).

        A surety, of course, may protest the liquidation of merchandise on which it undertakes to

secure the payment of duties.  *See* 19 U.S.C. § 1514(a).  In doing so, however, the surety largely

stands in the shoes of the importer and may raise arguments that the importer could make, such

as how much the importer owes upon liquidation of the entries.  If the protest is denied with

respect to these matters (e.g., amount of duties owed by importer, classification, country of

origin, drawback, etc.), the surety must appeal to this Court or be bound by the rule of finality as

to the liquidation itself.  *See Utex*, 857 F.2d at 1413–14.  Thus, if the Court were being asked

whether the importer owed § 1505(d) interest, it would be bound by the rule of finality.

        As to defenses to claims for damages relating to its contractual obligations to pay under

the bond, however, a surety is not precluded from raising defenses in a collection action because

it failed to protest or, because its protest was denied, and it failed to appeal to this Court.[13]  This

is the case even if the defenses replicate claims it made, or could have made, in a protest in order

to change the terms of a liquidation.  *See id.* at 1414 ("However, the issue at bar does not relate

to administrative review of liquidation, brought by the importer or surety, for the time for such

review is long past.").  This is because a cause of action of the kind presented here is on the

contract of insurance, not on the entry of goods into the United States.  Thus, the *Utex* Court held

that a surety need not file a protest and deposit the claimed duties before its arguments as to

liability under its bond could be heard.  *See id.* ("Sentry states, without contravention, that

protest and advance payment of liquidated damages were not required of defendants in a district

court action for damages, prior to enactment of the Customs Courts Act of 1980, which

transferred jurisdiction of actions on a surety bond from the district courts to the Court of

International Trade, 28 U.S.C. § 1582.  There is no suggestion in the legislative history that

Congress intended to change the status of the surety in such suits.  Indeed, Sentry points out that

the Customs Courts Act of 1980 contained a new provision, 28 U.S.C. § 1583, that authorized

sureties to implead third parties or file cross-claims in actions on a bond brought under 28 U.S.C.

§ 1582, an opportunity that is not readily harmonized with the government's position that the

surety must pay all claimed damages in full before raising any defense.").

---

[13]        Indeed, in the recent case of *AHAC III*, the Federal Circuit did not find that it was
prevented, by the rule of finality, from hearing the defendant's claim that it was not liable for
antidumping duties under its bond because the entries covered had been deemed liquidated.
Rather, the Court considered the surety's arguments, and found them wanting.  *See AHAC III*,
789 F.3d at 1319–23.

Moreover, the *Utex* rule is a sensible one, as it would be a strange situation indeed if the

unreasoned determination[14] of an administrative agency could preclude a party, in an action

before a court that is specifically authorized by Congress, from interposing its defenses to

insurance coverage.[15]  Thus, AHAC may raise its defenses here.

Despite AHAC's ability to raise such defenses, its arguments are unavailing.  AHAC

contends that 19 U.S.C. § 1505(d) does not apply to antidumping duties, but rather only to

ordinary customs duties, and thus is inapplicable to plaintiff's collection action.  For its part, the

United States insists that post-liquidation interest is owed equally on regular customs duties and

antidumping duties.  The subsection at issue, 19 U.S.C. § 1505(d) provides:

> If duties, fees, and interest determined to be due or refunded are not paid
> in full within the 30-day period specified in subsection (b) of this section, any
> unpaid balance shall be considered delinquent and bear interest by 30-day periods,
> at a rate determined by the Secretary, from the date of liquidation or reliquidation
> until the full balance is paid.  No interest shall accrue during the 30-day period in
> which payment is actually made.

19 U.S.C. § 1505(d).

---

[14]     Typically, Customs gives no reasons when it denies a protest, but rather merely
circles the word "[d]enied for the reason checked." U.S. Customs & Border Prot. Form 19
(05/10), *available at* http://www.cbp.gov/sites/default/files/documents/CBP_Form_19.pdf.  As a
result, these protest denials are accorded no deference in an action before this Court.  *See United
States v. Mead Corp.*, 533 U.S. 218, 228 (2001) ("'The weight [accorded to an administrative]
judgment in a particular case will depend upon the thoroughness evident in its consideration, the
validity of its reasoning, its consistency with earlier and later pronouncements, and all those
factors which give it power to persuade, if lacking power to control.'" (alteration in original)
(quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))).

[15]     Although cited by neither party, the case of *Hartford Fire Insurance Co. v. United
States* does not conflict with this conclusion.  *See Hartford Fire Ins. Co. v. United States*, 544
F.3d 1289 (Fed. Cir. 2008).  *Hartford* does not purport to alter the holdings in *Utex* or *Toshoku*,
nor does it even mention them; rather, *Hartford* held that a plaintiff could not bring a suit under
28 U.S.C. § 1581(i) if it could have achieved complete relief in a case brought under 28 U.S.C.
§ 1581(a).  *See id.* at 1293–94.

As noted, in *AHAC III*, the Federal Circuit recently construed a different statute, 19

U.S.C. § 580, which provides "[u]pon all bonds, on which suits are brought for the recovery of

duties, interest shall be allowed, at the rate of 6 per centum a year, from the time when said

bonds became due," and found that this provision covered antidumping duties. *See* 19 U.S.C. §

580; *AHAC III*, 789 F.3d at 1324–25 ("Thus, by the statute's plain terms, it covers, among other

things, bonds securing the payment of antidumping duties when the government sues for

payment under those bonds." (citing *Camargo Correa Metais, S.A. v. United States*, 200 F.3d

771, 773 (Fed. Cir. 1999) ("If the words are unambiguous, no further inquiry is usually

required."))).  The Court found: the statute was "a short, free-standing statute within the

Administrative Provisions section of Chapter 3 in Title 19"; "d[id] not cross-reference other

statutory provisions"; and "[t]he language—'all bonds' on which the government sues for 'the

recovery of duties'—is clear and unqualified." *Id.* at 1325.

As in 19 U.S.C. § 580,[16] the term "duties" in § 1505(d) is clear and unqualified.  Indeed,

there is nothing to indicate that Congress intended the meaning of the word "duties" to "'bear

some different import'" than encompassing "all duties." *See id.*  ("'In reviewing the statute's

text, we give the words their ordinary, contemporary, common meaning, absent an indication

Congress intended them to bear some different import.'" (quoting *Indian Harbor Ins. Co. v.

United States*, 704 F.3d 949, 954 (Fed. Cir. 2013))).  The statute thus provides for post-

liquidation interest on all unpaid duties, including special duties such as antidumping duties,

---

[16]     With respect to § 580 interest, the argument was made that, because the statute
long predated the advent of antidumping duties, Congress could not have anticipated that the
word "duties" in this section, encompassed antidumping duties. *See AHAC III*, 789 F.3d at 1324.
Section 1504(d), on the other hand, was first enacted after the first antidumping duties were
authorized by Congress.

from the date of liquidation or reliquidation until the balance is paid in full.[17]  Therefore, the

court holds that AHAC is liable for § 1505(d) post-liquidation interest.


**V.     PLAINTIFF IS NOT ENTITLED TO EQUITABLE PREJUDGMENT INTEREST**

In addition to payment of the 6% interest provided by 19 U.S.C. § 580, the United States

also seeks to recover equitable prejudgment interest in excess of the face value of the bond.  *See*

Pl.'s Br. 31.  Plaintiff insists that it is entitled to such interest "as compensation for the lost use of

funds over time."  Pl.'s Br. 31.  AHAC, however, raises several defenses to liability for such

interest.

First, AHAC contends that the funds at issue in this case are subject to the Continued

Dumping and Subsidy Offset Act of 2000[18] ("Byrd Amendment") and thus the United States is

---

[17]     AHAC relies on *Dynacraft* as supporting its contention that the word "duties" in § 1505 does not encompass antidumping duties.  *See* Pl.'s Br. 21–23.  The case, however, gives only modest comfort to plaintiff.  While it does discuss the uses of the words "regular duties," "general duties," "special duties," and "additional duties," the *Dynacraft* Court

> did not decide the case based on the ground that the word 'duties' in § 1505(b) excludes antidumping duties.  It explicitly based its decision on four other grounds related to the interplay between 19 U.S.C. §§ 1505, 1673f, and 1677g.  It left open the question of "whether or not for some purposes 19 U.S.C. § 1505(b) and (c) include antidumping duties among the [d]uties, fees, and interest determined to be due upon liquidation or reliquidation."

*AHAC III*, 789 F.3d at 1327 (alteration in original) (citing *Dynacraft*, 24 CIT at 993, 118 F. Supp. 2d at 1292).

[18]     Pursuant to the Continued Dumping and Subsidy Offset Act of 2000, antidumping duties collected by the United States were provided to "affected domestic producers" of goods that were subject to an antidumping duty order.  Continued Dumping and Subsidy Offset Act of 2000, codified at 19 U.S.C. § 1675c, *repealed by* Pub. L. 109-171, § 7601(a), 120 Stat. 154 (2006) ("Byrd Amendment"); *see Pat Huval Rest. & Oyster Bar, Inc. v. Int'l Trade Comm'n*, 785 F.3d 638, 640 (Fed. Cir. 2015) (citing 19 U.S.C. § 1675c(b)(1), (d)).  "The statute defined an 'affected domestic producer' as a party that either petitioned for an antidumping duty order or was an 'interested party in support of the petition.'"  *Id.* (quoting 19 U.S.C. § 1675c(b)(1)(A)).  Although "[t]he Byrd Amendment was repealed in 2006, . . . the repealing statute provided that any duties paid on goods that entered the United States prior to the date of repeal would continue

(footnote continued)

not entitled to equitable prejudgment interest.  This is because, according to AHAC, under the

Byrd Amendment, the funds, once collected, are deposited into special non-interest-bearing

accounts for the benefit of affected domestic producers and then distributed to these producers,

rather than placed into the general Treasury of the United States.  *See* Def.'s Suppl. Br. in Supp.

of its Mot. for Summ. J. & in Opp'n to Pl.'s Mot. for Summ. J. 1 (ECF Dkt. No. 72) ("Def.'s

Suppl. Br.").  According to AHAC, because the United States "had no right or ability to earn a

return on the bond amounts that were withheld during the pendency of this litigation[,] . . . [it]

did not lose any use of the money and is not entitled to compensation."  Def.'s Suppl. Br. 1.

Thus, for AHAC, to award plaintiff equitable prejudgment interest would "grant[ ] the

government a windfall that it never would have obtained had the bond been paid upon demand."

Def.'s Suppl. Br. 1.

The court finds this argument to be without merit.  The antidumping duties on the bonds

in this case, like any other case not subject to the Byrd Amendment, are owed to the United

States, not to a fund established by the United States.  That is, although the funds, once collected,

may be placed in accounts for distribution to domestic producers in accordance with the Byrd

Amendment, this does not alter the fact that the money is owed to the United States and, when

paid, will be paid to the United States.  *See* Pl.'s Resp. to Def.'s Suppl. Br. 5–6 (ECF Dkt. No.

80) ("[C]hecks issued for antidumping or countervailing duty bills are made payable to the

Government, and these checks are not simply forwarded to [affected domestic producers] for

them to deposit.  Rather, after receiving the funds, the Government computes and distributes the

'continued dumping and subsidy offset,' which is generally equivalent to the principal balance

and section 1677g interest collected for relevant antidumping and countervailing duty entries.

---

to be distributed in accordance with the pre-repeal statutory scheme."  *Id.* (citing Pub. L. 109-
171, § 7601(a), 120 Stat. at 154).

However, as discussed further below, the 'continued dumping and subsidy offset' is only

distributed if there are [affected domestic producers] who timely file certifications and have

qualifying expenditures, which is not always the case."); *see also Distribution of Continued*

*Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 48,546, 48,550

(Dep't of the Treasury Sept. 21, 2001) ("[F]unds in Government accounts[19] are not interest-

bearing unless specified by Congress.  Because Congress did not make an explicit provision for

the accounts established under the [Byrd Amendment] to be interest-bearing, no interest may

accrue on these accounts.  Thus, only interest charged on antidumping and countervailing duty

funds themselves, pursuant to the express authority in 19 U.S.C. 1677g, will be transferred to the

special accounts and be made available for distribution under the [Byrd Amendment].").

Accordingly, because the funds are owed to the United States, plaintiff was deprived of the use

of the money when AHAC failed to pay, and is therefore not foreclosed from collecting equitable

prejudgment interest on the unpaid amounts it was owed under the bonds on this ground.

Next, the court must determine whether, as a consequence of AHAC's default, the

balance of the equities directs that the United States is entitled to equitable prejudgment interest

in excess of the bond limit in this case.  In determining whether to grant an award of equitable

prejudgment interest, full compensation, including the time value of money, should be a court's

primary concern.  *See AHAC III*, 789 F.3d at 1329; *see also West Virginia v. United States*, 479

U.S. 305, 310 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of use of

money due as damages from the time the claim accrues until judgment is entered, thereby

achieving full compensation for the injury those damages are intended to redress.").  In other

---

[19]     It is worth noting that, were these funds to be interest bearing, the United States
Treasury would merely be paying interest to itself.  It is also worth noting that the United States
must pay interest on the money it borrows to make up for the failure of its debtors to pay
amounts owed.

words, if the United States has been compensated for the time value of its money by another provision, it is difficult to see why equity should direct that it may collect an amount for this purpose again.

Recently, the Federal Circuit in awarding the United States prejudgment statutory interest under 19 U.S.C. § 580, reaffirmed the longstanding principle that "'[i]n the absence of a statute governing the award of prejudgment interest, the question [of prejudgment interest] is governed by traditional judge-made principles.'"  *AHAC III*, 789 F.3d at 1328 (alterations in original) (quoting *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1367 (Fed. Cir. 2005)).  Here, there is a statute, 19 U.S.C. § 580, that has been found to provide prejudgment interest to the United States for interest on bonds securing antidumping duties.  *See id.* at 1324.  Thus, where, as here, a statute governs the award of prejudgment interest (i.e., § 580), the Federal Circuit has explained that "the award of prejudgment interest [is] an equitable determination to be exercised at the discretion of the trial judge."  *Id.* at 1328 (citing *United States v. Reul*, 959 F.2d 1572, 1577 (Fed. Cir. 1992); *United States v. Imperial Food Imps.*, 834 F.2d 1013, 1016 (Fed. Cir. 1987)).

Because the posture of this case is not "in the absence of a statute," the court holds that plaintiff is not entitled to an award of equitable prejudgment interest.  The law is clear that the purpose of equitable interest is to ensure that the party be fully compensated for the time during which it was deprived of the use of the funds.  Because the United States will be fully compensated by the statutory prejudgment interest it will receive by means of 19 U.S.C. § 580, here, the balance of equities tips in favor of AHAC and against an award of equitable prejudgment interest.  In other words, it would be inequitable to award the United States *both* statutory prejudgment interest under § 580 *and* equitable prejudgment interest under the principles of equity.  Indeed, as this Court recently observed in a similar case,

> [b]etween the relevant dates (Customs' October 2, 2005 demand and the court's
> January 23, 2014 judgment), the short-term funds rate varied between 0.18% and
> 5.16%.  The average rate was 1.77%.  As a result, the 6% rate that the [United
> States] received under § 580 "more than fairly compensates the [United States]
> for the time value of the unpaid duties.  To award equitable pre-judgment interest
> in these circumstances would overcompensate the [United States]."

*United States v. Am. Home Assurance Co.*, 39 CIT __, __, Slip Op. 15-112, at 6 (2015)(quoting

*United States v. Am. Home Assurance Co.* (*AHAC IV*), 39 CIT __, __, Slip Op. 15-88, at 17

(2015)).

Accordingly, in view of the court's holding that plaintiff is entitled to prejudgment

statutory interest under 19 U.S.C. § 580, plaintiff may not also recover equitable prejudgment

interest in this case.


## VI.   PLAINTIFF IS ENTITLED TO POST-JUDGMENT INTEREST

Last, the United States seeks an award of post-judgment interest under 28 U.S.C. § 1961,

which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered

in a district court."  *See* Pl.'s Br. 34–35; 28 U.S.C. § 1961(a).  Although § 1961 does not apply

directly to the Court of International Trade, the Federal Circuit has confirmed this Court's ability

to award post-judgment interest at the rate provided in § 1961.  Specifically, 28 U.S.C. § 1585

provides that the Court of International Trade "posses[es] all the powers in law and equity of, or

as conferred by statute upon, a district court of the United States."  *See United States v. Great*

*Am. Ins. Co. of N.Y.*, 738 F.3d 1320, 1325–26 (Fed. Cir. 2013); 28 U.S.C. § 1585.

AHAC does not object to plaintiff's claim that it is entitled to post-judgment interest, nor

could it.  "Post-judgment interest is not discretionary, but rather is available as a matter of right

to prevailing parties."  *AHAC IV*, 39 CIT at __, Slip Op. 15-88, at 19.  Hence, because plaintiff

has prevailed in this matter by means of an award of a money judgment against defendant,

plaintiff is entitled to post-judgment interest at the rate set forth in § 1961, calculated from the

date of entry of the judgment.  *See* 28 U.S.C. § 1961; *AHAC IV*, 39 CIT at __, Slip Op. 15-88, at

19.


## CONCLUSION

Based on the foregoing, the court grants, in part, defendant's motion for summary

judgment, and grants, in part, plaintiff's cross-motion for summary judgment.  The parties are

directed to confer and provide the court with a proposed judgment by November 19, 2015.

Dated:          October 28, 2015
                New York, New York


                                                    /s/ Richard K. Eaton
                                        _____
                                                    Richard K. Eaton